IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:17-CV-99-KS

| | |
|---|---|
| CELESTINA CRISTOBAL ADRIAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Celestina Cristobal Adrian (Plaintiff) filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for Disability Insurance Benefits (DIB). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties. For the reasons set forth below, the court grants Plaintiff's Motion for Judgment on the Pleadings, denies Defendant's Motion for Judgment on the Pleadings, and remands the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability and DIB on July 26, 2013, with an alleged onset date of July 30, 2012. (R. 16, 86–87, 192.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 16, 101, 115, 141–42.) A hearing was held on June 8, 2016, before Administrative Law Judge (ALJ) Benjamin R. McMillion, who issued an unfavorable ruling on July 26, 2016. (R. 16, 28.) The Appeals Council denied Plaintiff's request for review on June 1, 2017. (R. 1.) Plaintiff seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (first quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971); then quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*

*v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.*

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since July 30, 2012, the alleged onset date. (R. 18.) Next, the ALJ determined Plaintiff had the following

3

severe impairments: "diabetes type II, hepatitis B, cirrhosis, chronic fatigue [syndrome], anxiety disorder, and dysthymic disorder." (*Id.*)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19.) The ALJ specifically discussed Listing 5.05 (chronic liver disease), Listing 9.00B(5) (diabetes mellitus) in conjunction with SSR 14–2p, 2014 WL 2472008 (June 2, 2014) (guidance on diabetes), Listing 12.04 (affective disorders), and Listing 12.06 (anxiety-related disorders). (R. 19–21.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity (RFC) and found that Plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can lift and carry twenty pounds occasionally and ten pounds frequently. [Plaintiff] can stand and/or walk for a total of six hours in an eight-hour workday, and she can sit for a total of six hours in an eight-hour workday. [Plaintiff] can occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally use foot pedals, balance, stoop, kneel, crouch and crawl. [Plaintiff] can perform simple and routine tasks.

(R. 21.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms "not entirely consistent" with the medical evidence in the record. (R. 23.) At step four, the ALJ concluded Plaintiff was unable to perform her past relevant work as a Nursing Supervisor, General Duty Nurse, and Staff Nurse. (R. 26.) At step five, the ALJ identified Inspector, Label Coder, and Microfilm

Mounter as jobs with sufficient numbers in the national economy that Plaintiff could perform. (R. 27.)

IV. Plaintiff's Arguments

Plaintiff raises four arguments on review. She contends the ALJ

(A) failed to include in the RFC limitations related to Plaintiff's chronic fatigue syndrome (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #16] at 4–7);

(B) violated the treating physician rule in assessing the RFC (*id.* at 8–17);

(C) failed to conduct a proper mental RFC assessment as required by *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) (*id.* at 17–21); and

(D) failed to consider Plaintiff's post-hearing objection to the Vocational Expert testimony (*id.* at 22–28).

The Commissioner has addressed each argument and contends the ALJ's decision correctly applied relevant law and regulations and is supported by substantial evidence. For the reasons discussed below, the undersigned disagrees with the Commissioner and, therefore, remands the matter to the Commissioner for further proceedings. Plaintiff's first three arguments relate to the ALJ's RFC assessment and are therefore addressed together.

A. RFC

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental,

sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). The RFC is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96–8p, 1996 WL 374184, at *7. If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015)). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Simply put, this means an ALJ must "[s]how [his] work." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to determining whether substantial evidence

supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295).

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3 (July 2, 1996).[1] As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R § 404.1527(b)–(c); SSR 96–8p, 1996 WL 374184, at *7. Medical opinions are statements from physicians or other "acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

Under the regulations applicable to Plaintiff's claim, controlling weight is to be given to "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) [if it] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Craig*, 76 F.3d at 590. A treating source is a "physician, psychologist, or other acceptable medical source who provides . . . or has provided [the claimant] with medical

---

[1] This agency ruling was rescinded March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15,263 (Mar. 27, 2017).

7

treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502 (effective June 13, 2011, to Mar. 26, 2017).

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given the opinion by applying the following factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the physician is a specialist in the field in which the opinion is rendered; and (6) any other relevant factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c)(2)–(6); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011). "The ALJ is not required to discuss all of these factors." *Ware v. Astrue,* No. 5:11-CV-446-D, 2012 WL 6645000, at *2 (E.D.N.C. Dec. 20, 2012) (citing *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007), and *Munson v. Astrue*, No. 5:08-CV-110-D(3), 2008 WL 5190490, at *3 (E.D.N.C. Dec. 8, 2008)). "However, the ALJ must give 'good reasons' for the weight assigned to a treating source's opinion." *Ware*, 2012 WL 6645000, at *2 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)).

1. *Chronic Fatigue Syndrome Symptoms*

Plaintiff argues the ALJ erred by not assessing more severe work-related restrictions based on chronic fatigue syndrome, specifically as it relates to Plaintiff's allegation that she has difficulty maintaining attention and needs to lie down during the day for rest. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 7.) In contrast, the Commissioner

8

contends the ALJ sufficiently explained his reasons for not imposing the more restrictive RFC limitations sought by Plaintiff. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #21] at 8.) Specifically, the Commissioner argues the ALJ summarized the evidence relating to Plaintiff's chronic fatigue syndrome, including Plaintiff's testimony, and "[f]ollowing [that] summary, . . . stated how the evidence impacted the respective functional limitations he assessed in the RFC, thus building the requisite 'logical bridge' from the evidence to his conclusions." (*Id.* (citing R. 24 and *Monroe*, 826 F.3d at 189).)

This is the analysis or "logical bridge" to which the Commissioner refers in the ALJ's opinion:

> The undersigned has given [Plaintiff] the benefit of the doubt regarding [Plaintiff]'s symptoms resulting from her diabetes type II, hepatitis B, cirrhosis, chronic fatigue [syndrome], anxiety disorder, and dysthymic disorder, and the residual functional capacity indicated above adequately accounts for these symptoms.

(R. 24.)

Preliminarily, it is unclear what the ALJ meant when he wrote that he gave Plaintiff "the benefit of the doubt." For example, what aspect of the RFC did the ALJ give Plaintiff the benefit of the doubt on? And what functional limitations did that benefit of the doubt impact?

The Commissioner argues the ALJ gave Plaintiff the benefit of the doubt in concluding that Plaintiff was moderately limited as regards concentration, persistence, and pace because the record as a whole, "particularly" certain daily living activities, indicated that Plaintiff "does not require greater limitations." (Def.'s Mem.

9

Supp. Mot. J. Pldgs. at 15 (citing R. 23).) But the ALJ never specified *how* he gave Plaintiff the benefit of the doubt, and the Commissioner's argument is speculative at best. *See Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) (reviewing court may only affirm an ALJ's decisions based on the reasons the ALJ provided); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("It may be, of course, as the Secretary suggests on appeal, that the ALJ considered all of these factors and proposed to himself cogent reasons for disregarding them. However, on this record we cannot so determine."); *Ware v. Astrue*, No. 5:11-CV-446-D, 2012 WL 6645000, at *3 (E.D.N.C. Dec. 20, 2012) ("The court cannot supplement the ALJ's explanation with the Commissioner's legal arguments in this court."). It is also questionable factually. State agency consultant Dr. Steven Salmony opined that Plaintiff had moderate limitations in concentration, persistence, or pace. (R. 25 (citing R. 86–100).) Since the ALJ gave Dr. Salmony's opinions significant weight, it would seem illogical for the ALJ to state he was giving Plaintiff "the benefit of the doubt" as to these limitations.

Even more problematic though is the inadequate analysis of the evidence given by the ALJ concerning the work-related restrictions caused by Plaintiff's chronic fatigue syndrome. The Fourth Circuit recently expounded on the ALJ's duty to explain how the evidence supports an RFC assessment, stating:

> [T]he ALJ must *both* identify evidence that supports his conclusion *and* "build an accurate and logical bridge from [that] evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

10

> We agree with [the claimant] that the ALJ did not do so here. The ALJ concluded that [the claimant] could perform "medium work" and summarized evidence that he found credible, reliable, useful, and consistent. But the ALJ never explained how he concluded—*based on this evidence*—that [the claimant] could actually perform the tasks required by "medium work," such as lifting up to 50 pounds at a time, frequently lifting or carrying up to 25 pounds, or standing or walking for six hours. The ALJ therefore failed to build an "accurate and logical bridge" from the evidence he recounted to his conclusion about [the claimant]'s residual functional capacity.

*Woods*, 888 F.3d at 694. Like in *Woods*, the ALJ here summarized the evidence upon which he apparently relied, but then issued a summary conclusion, bereft of analysis. (*See* R. 24.) Simply summarizing evidence and then stating a conclusion will not suffice.

The Commissioner further argues that Plaintiff's self-reported daily living activities cited by the ALJ are substantial evidence to support the RFC. (Def.'s Mem. Supp. Mot. J. Pldgs. at 9, 15 (characterizing the self-reported daily living activities of attending to personal hygiene, using a computer, talking on the telephone, doing laundry, and cooking as "wide and varied").) There are three problems with this. First, the ALJ never explained how these daily living activities impacted the RFC. (*See* R. 23–24.) Second, even if the Commissioner were correct and the ALJ implicitly used this evidence to formulate the RFC, the ALJ never explained why he credited Plaintiff's self-reports of the above-listed activities but did not credit Plaintiff's other self-reports about her difficulties with daily living activities (e.g., her fatigue and the need to lie down during the day). Such unexplained selection of a Plaintiff's claimed symptoms would be improper. *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and

cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010))). Third, the ALJ's opinion never discussed the extent to which Plaintiff could perform the daily living activities summarized in the ALJ's opinion and referenced by the Commissioner on review. *See Woods*, 888 F.3d at 694–95 ("An ALJ may not consider the *type* of activities a claimant can perform without also considering the *extent* to which she can perform them."). The court, therefore, rejects the Commissioner's argument in this regard.

2. *Treating Physician Rule*

Plaintiff also argues the ALJ's decision to assign "little weight" to the opinions of Plaintiff's long-time treating physician, Dr. Fred Fowler, is error. More specifically, Plaintiff argues the ALJ's rationale for assigning little weight to Dr. Fowler's opinions violated 20 C.F.R. § 404.1527(c)(2). (Pl.'s Mem. Supp. Mot. J. Pldgs. at 12–13.) In contrast, the Commissioner argues the ALJ adequately explained why he assigned little weight to Dr. Fowler's opinions. (Def.'s Mem. Supp. Mot. J. Pldgs. at 11–13.)

The ALJ's discussion of Dr. Fowler is limited to four sentences, only two of which provide analysis or explanation: "[Dr. Fowler's] opinion is given little weight as it is not supported by a majority of the objective medical evidence. In September of 2013, while at University Family Physicians, [Plaintiff]'s range of motion, strength, cranial nerves, motor functions, sensations, reflexes, gait, and coordination were all intact." (R. 25.)

This is inadequate analysis for the opinion of a treating physician who is a specialist and who had treated Plaintiff for more than fifteen years (R. 478). While the ALJ is not required to discuss each factor listed in 20 C.F.R. § 404.1527(c)(2), he must provide good reasons for discounting the weight of a treating specialist. Here, the only specific reason provided by the ALJ to discount Dr. Fowler's opinions related to a single medical visit. Moreover, a general finding that on a particular date at a particular medical appointment Plaintiff's range of motion, strength, nerves, gait, and coordination were "intact" does not address the key issue in this case – Plaintiff's ability, or lack thereof, to use those abilities throughout an eight-hour workday. *See Mascio*, 780 F.3d at 637 ("[A]lthough the ALJ concluded that Mascio can perform certain functions, he said nothing about Mascio's ability to perform them for a full workday"); *Woods*, 888 F.3d at 694–95 (holding that if an ALJ relies on evidence that a claimant can perform certain daily living activities, then the ALJ must also consider the extent to which the claimant can perform those activities).

In response, the Commissioner marshals evidence from the record and advances several cogent arguments to explain why the ALJ assigned Dr. Fowler's opinions little weight. (Def.'s Mem. Supp. Mot. J. Pldgs. at 11–12). Again, though, this is post-hoc rationalization, which may not be considered by the court. *See Patterson*, 839 F.2d at 225 n.1; *DeLoatche*, 715 F.2d at 150; *Ware*, 2012 WL 6645000, at *3. Moreover, in light of other errors in the ALJ's opinion, the ALJ's failure to analyze appropriately the treating physician's opinions cannot be considered harmless.

### 3. *Mental RFC*

Plaintiff also argues the ALJ failed to comply with *Mascio*'s dictate that a restriction to simple, routine tasks based on a moderate limitation in concentration, persistence, or pace be explained. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 18–21.) The Commissioner is correct that *Mascio* does not stand for the proposition that moderate limitation in concentration, persistence, or pace always translates into an associated RFC restriction. (Def.'s Mem. Supp. Mot. J. Pldgs. at 13.)

Here, the ALJ was clear about his decision to credit the opinions of non-examining agency consultant Dr. Salmony and consultative examiner Dr. Karen Crane, Psy. D. (R. 25.) These doctors indeed opined that Plaintiff could perform simple, routine tasks. But as outlined above, the ALJ failed to reconcile the opinions of these doctors with contrary evidence, in violation of SSR 96–8p. Thus, the court is unable to say that the mental RFC assessment conducted by the ALJ is supported by substantial evidence.

For the foregoing reasons, the court cannot meaningfully review the ALJ's opinion, and, therefore, REMANDS the matter to the Commissioner for further proceedings.

### B. Objection to Vocational Expert Testimony

Plaintiff also argues the ALJ erred by failing to consider her post-hearing objection to the underlying jobs information provided by the Vocational Expert (VE) during the hearing. (Def.'s Mem. Supp. Mot. J. Pldgs. at 22–27.) The Commissioner argues (i) that Plaintiff's reliance on sub-regulatory guidance in the form of the

HALLEX Manual is wrong; and (ii) the ALJ did consider the post-hearing objection, which is substantively meritless. (Def.'s Mem. Supp. Mot. J. Pldgs. at 16–17.) Because this matter is remanded for the errors in the RFC assessment described above, the undersigned declines to address this assignment of error. However, the court notes that this issue was addressed in *Boston v. Colvin*, No. 4:14-CV-206-D, 2016 WL 721563, at *8–14 (E.D.N.C. Feb. 2, 2016), *mem. & recommendation adopted by* 2016 WL 738762 (Feb. 23, 2016).

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #15] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #21] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 10th day of September 2018.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge